IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROLAND GRAHAM,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 24-CV-0124** |
| | : | |
| **MOON LODGE CHIPS CORP.**, *et al.* | : | |
|     Defendants. | : | |

**MEMORANDUM**

**BEETLESTONE, J.**                                                                                                              **JULY   1ST  , 2024**

    In this civil action, Plaintiff Roland Graham, a prisoner at SCI Rockview, raises breach of contract and/or conditions of confinement claims against several individuals and at least three different companies. Because Graham's initial submissions in this case presented numerous claims and allegations scattered across multiple filings, by Order dated March 19, 2024, the Court gave Graham an opportunity to file a complete and comprehensive amended complaint in which he could bring all of his allegations and claims together in one pleading. On April 12, 2024, Graham filed his Third Amended Complaint. For the following reasons, the Court will dismiss Graham's Third Amended Complaint and give him one final opportunity to amend.

**I.       FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

    Graham initiated this action on January 8, 2024 by filing a Complaint against Moon Lodge Chip Corp. and Olivette Products, LLC, alleging breach of contract claims because the sour cream chips he had been purchasing from the prison commissary had been out of stock for approximately thirty days. (ECF No. 2 at 1-3.) In the initial Complaint, Graham also identified

---

[1] The following allegations are taken from Graham's filings. The Court adopts the pagination supplied to those filings by the CM/ECF docketing system.

the "NAACP Philadelphia Branch," David Rudovsky and Michael Bailey (who Graham asserts are part of the "Pennsylvania Institution Law Project"), and Oasis Financial Corp., as additional Defendants, alleging that each of them has either deprived him of legal or monetary assistance with respect to one of his prior civil cases brought in this District. (*Id.* at 5-8.) On February 12, 2024, Graham filed an Amended Complaint. (ECF No. 8.) In the Amended Complaint, Graham asserted claims against Food Express Corp., alleging that it sold a "fake bag of coca" to the prison commissary that caused him stomach upset and diarrhea "all night." (*Id.* at 2-3.) Graham also identified "Mr. YJ. Ruiz, Staff Attorney" as a Defendant, indicating that Ruiz "made [Graham] a promise" to refer an attorney but "forfeit[ed] his duty." (*Id.* at 3.)

By Order dated March 19, 2024, the Court granted Graham leave to proceed *in forma pauperis* and advised him that his filing of multiple pleadings confused the nature of the claims before the Court. (ECF No. 8.) Graham was instructed that "an amended pleading supersedes the original pleading," rendering "the original pleading a nullity" and that "the most recently filed amended complaint becomes the operative pleading." *See* ECF No. 8 (citing *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019); *Smith v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted,* No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012) ("[A]s a practical matter, the filing of amended . . . complaints effectively constitutes an abandonment of any prior complaints filed by a plaintiff.")). Considering his *pro se* status,[2] Graham was provided an opportunity to file a complete and comprehensive second amended complaint in which he could bring all his allegations and claims

---

[2] The Court noted that because Graham is representing himself, he may not have appreciated that his second pleading could be construed as an amended complaint, which would replace and supersede his initial complaint. The Court also noted that it could not disregard the Federal Rules of Civil Procedure by considering all the allegations and claims Graham had filed at different times.

2

together in one pleading. *See* ECF No. 8 (citing *Angelo v. NVR, Inc.*, No. 18-523, 2020 WL 1443214, at *4 (D. Del. Mar. 24, 2020) ("Plaintiff is reminded that should he opt to file a second amended complaint, all allegations shall be contained in one pleading . . . ."); *Bradford v. Currid*, No. 15-606, 2015 WL 8784663, at *2 (W.D. Okla. Dec. 15, 2015) (requiring plaintiff to file one comprehensive pleading because "the Court will not piecemeal together the allegations from the Complaint, the Supplemental Facts and the Amended Complaint to discern whether Plaintiff can proceed with his claims")).

On March 25, 2024, Graham filed an Amended Complaint together with a Rule to Show Cause "to arrest all Defendants." (ECF Nos. 10 and 11.) In this Amended Complaint, Graham sought to add certain staff members and officials from SCI Rockview as Defendants based on claims of reckless endangerment. (ECF No. 10.) On April 8, 2024, Graham refiled multiple pages from his initial Complaint, which the Clerk of Court construed as his Second Amended Complaint. (ECF No. 12.) On that same date, Graham also filed a Notice of Claim alleging breach of contract and reckless endangerment claims against Bobbie Jo Solomon (Warden), Mr. Mike Rowe (Deputy Warden), Mr. Woodring (Deputy Warden), Mr. Smith (Food Service Manager), and Mr. Forgash (Food Service Manager). (ECF No. 13.)

On April 12, 2024, Graham filed a Third Amended Complaint ("TAC"), which he completed by utilizing the Court's standard complaint form for filing a civil action alleging a violation of civil rights.[3] (ECF No. 14.) In the TAC, Graham names the following Defendants in their individual capacities: (1) Moon Lodge Corporation; (2) Oasis Financial Corporation; (3)

---

[3] By letter dated March 21, 2024, Graham advised the Court that he "brought all of [his] allegations and claims together in one pleading" by answering a "questionnaire" for the Court. (ECF No. 15.) The Court understands Graham to be referring to the standard form complaint that he filed on April 12, 2024 as his TAC.

NAACP Philadelphia Branch; (4) David Rodovsky, Attorney; (5) Michael Baily, Paralegal; (6) Food Express USA; (7) Mr. Y.J. Ruiz, Esquire, Staff Attorney, Philadelphia Bar Association; (8) Bobbie Jo Solomon, Warden; (9) Mr. Mike Rowe, Deputy Warden; (10) Mr. Woodring, Deputy Warden; (11) Mr. Smith, Food Service Manager; (12) Mr. Forgash, Food Service Manager; (13) Dunn, Unit Manager; (14) C/O Coral; (15) Ms. Clark, Commissary Manager. (TAC (ECF No. 14) at 2-6.) Graham asserts "breach of contract," alleging that "prison staff is under a legal contract policy" to "perform a[n] integrity duty." (*Id.* at 5.) He alleges that the food service department at SCI Rockview is serving unsafe, rotten, and old food, which is a "personal injury atrocity" to his health. (*Id.* at 8.) He further avers that the prison staff have committed acts of reckless endangerment, constituting a "crime under sec 18-1705."[4] (*Id.* at 7-8.) Graham asserts that he was forced to take medication, including "medical milk magnesia," to flush the "old hard food" out of his body. (*Id.* at 8.)

## II. STANDARD OF REVIEW

Because Graham is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss his Third Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*]

---

[4] This federal statute, which provides for penalties resulting from the destruction of letter boxes or mail, does not confer a private right of action. *See Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1268 (citing cases).

4

complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Graham is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett*, 938 F.3d at 91.  To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2).  The Third Circuit has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted).  "A complaint must contain sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim."  *Prelle v. United States by Prelle*, No. 22-1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (*per curiam*) (internal quotations and citations omitted).

### III.   DISCUSSION

As noted by the Court's March 19, 2024 Order, "an amended pleading supersedes the original pleading and renders the original pleading a nullity," meaning that "the most recently filed amended complaint becomes the operative pleading."  *See* ECF No. 9 at 2 (quoting *Garrett*, 938 F.3d at 82).  Even under the liberal construction afforded to complaints filed by self-represented litigants, courts may not amalgamate documents to construct claims.  *See Argentina*

*v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings."). Accordingly, as the most recently filed amended complaint, the TAC is the operative pleading in this case. *See Garrett*, 938 F.3d at 82; *Smith*, 2012 WL 1068159, at *4.

A.      Rule 8

Graham's TAC fails to comply with Rule 8 and to state a claim. Although Graham used the Court's standard form complaint to set forth his allegations, it is nevertheless unclear what claims he presents against each defendant. He alleges "breach of contract" and avers that the food service department at SCI Rockview is serving unsafe, rotten, and old food, which is a "personal injury atrocity" to his health. (TAC at 8.) He further avers that the prison staff have committed acts of reckless endangerment, constituting a crime under 18 U.S.C. § 1705. (*Id.* at 7-8.) However, the circumstances surrounding the alleged breach of contract and acts of reckless endangerment, as well as the extent of his alleged injury or illness, remain entirely unclear. The events related to the alleged violations Graham claims to have suffered as well as the specific individuals and/or entities responsible, are not apparent even under a careful reading and liberal construction of the TAC. In fact, as addressed more fully below, Graham has failed to raise any specific allegations against any of the named Defendants explaining their personal involvement in the alleged constitutional or state law violations.

Because the facts are alleged in an unclear manner, the TAC fails to provide fair notice of the grounds upon which Graham's claims against each Defendant rest, as required by Rule 8. *See Afzal v. N.J. Bd. of Med. Examiners*, No. 22-1609, 2022 WL 4533826, at *3 (3d Cir. Sept. 28, 2022) (affirming dismissal of complaint pursuant to Rule 8 because plaintiff failed to plead adequate factual content to support a reasonable inference that defendants were liable and failed

6

to present cognizable legal claims to which defendants could respond on the merits). Although Graham's failure to comply with Rule 8 is sufficient on its own to dismiss the TAC, there are additional defects in his claims that support dismissal.

### B.   Federal Claims

Section 1983, the vehicle by which federal constitutional claims may be brought in federal court, "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).

To the extent that Graham asserts claims pursuant to § 1983, he "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."[5]  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  Additionally, in a § 1983 action, the personal involvement of each

---

[5] Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### 1. State Actor Requirement

In conclusory fashion, Graham asserts that the "Defendants" committed acts "under color of state law" (*see* TAC at 6), but he has failed to specifically allege any facts demonstrating that any of the named Defendants is a state actor. To the contrary, several of the Defendants named in the TAC are not state actors. For instance, as Graham has previously been advised, any federal constitutional claims against Attorney Rudovsky cannot be maintained because attorneys are not state actors for purposes of § 1983. *See Graham v. Rudovsky*, No. 21-2759, 2021 WL 5040479, at *2 (E.D. Pa. Oct. 29, 2021) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.") (footnote omitted); *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.")). This would also apply to any constitutional claims against Paralegal Baily. *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 320 (S.D.N.Y. 2008) (noting that a paralegal for a private attorney is not a state actor).

Courts have also consistently held that law firms and legal aid societies are not state actors for purposes of § 1983. *See Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F. App'x 167, 169 (3d Cir. 2012) (none of the defendants named, including an attorney, his law firm, the

8

Pennsylvania Bar Association, the Allegheny County Bar Association or its three individual members, were state actors for purposes of Section 1983); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983."); *Caroselli v. Curci*, 371 Fed. App'x. 199, 201 (2d Cir. 2010) ("[I]t is well-established that the Legal Aid Society and its attorneys do not act under color of state law by representing clients"); *Williams v. Raynor*, 669 F. App'x 340 (8th Cir. 2016) ("private counsel are not state actors (and as such, neither is their firm)"); *Manko v. Steinhardt*, No. 11-5430, 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) ("private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law"); *Whitson v. Metro. St. Louis Sewer Dist.*, Civ. A. No. 11-2217, 2011 WL 13189843, at *1 (E.D. Mo. Dec. 27, 2011), *aff'd,* 470 F. App'x 525 (8th Cir. 2012) (law firm not state actor for purposes of 42 U.S.C. § 1983); *Szabo v. Legal Aid Soc'y.*, No. 17-219, 2017 WL 1401296, at *4 (E.D.N.Y. Apr. 19, 2017).

Finally, several courts have concluded that vendors who sell products to prisoners, are not acting under color of state law. *See Davis v. Brown*, No. 21-171, 2022 WL 4714913, at *5 (W.D. Mich. Oct. 3, 2022) (citing *Kyles v. Keefe Commissary Network, LLC*, No. 14-11907, 2015 WL 1637466, at *6 (E.D. Mich. Apr. 13, 2015) ("[N]umerous federal courts have found that corporations involved in [supplying products to a department of corrections or selling products directly to prisoners] did not act under color of state law."); *LaPlante v. Lovelace,* No. 13-32, 2013 WL 5572908, at *12 (W.D. Mich. Oct. 9, 2013) (finding no evidence that Keefe Supply Company acted under color of state law by selling products to a prison commissary, because its conduct could not be "fairly attributed to the state"); *Smith v. Ozmint,* No. 07-3644, 2009 WL 692828, at *4 (D.S.C. Mar.12, 2009), *aff'd*, 356 F. App'x 646 (4th Cir. 2009) (finding

9

that a company which produced hygiene products for sale to prison commissaries did not act under color of state law, and stating that "the mere act of selling something to a government entity to be distributed to inmates does not render the manufacturer or distributor state actors"); *Plummer v. Valdez,* No. 06-1119, 2006 WL 2713784, at *2 (N.D. Tex. Sept. 21, 2006) (holding that a private corporation that sold products to a jail commissary did not act under color of state law).

### 2. Personal Involvement Requirement

The Court notes that Graham's TAC does not specifically attribute conduct to any named Defendant. In drafting his TAC, Graham frequently and collectively refers to "Prison Staff," "Prison Officers," or "All Defendants" as a group without clarifying the specific basis for each Defendant's liability. These types of allegations are not plausible because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Where there are multiple events and defendants at issue, alleging personal involvement cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific acts of each Defendant that forms the basis for that individual's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*,

957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Furthermore, Graham's conclusory assertions that large groups of these Defendants are liable to him "under a legal contract" or generally violated his rights by committing acts of "reckless endangerment" in an unspecified manner, are insufficient to state a claim.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

       **C.**       **Remaining Claims**

Nothing in the TAC provides any factual basis for a claim of breach of contract or breach of fiduciary duties because Graham has not alleged any relevant contractual or fiduciary relationships. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) ("It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages" ); *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020) (" To prevail on [a] breach of fiduciary duty claims, [a plaintiff is] required to prove the following elements: the existence of a fiduciary relationship between [the parties], that [the defendant] negligently or intentionally failed to act in good faith and solely for [the plaintiff' s] benefit, and that [the plaintiff] suffered an injury caused by [the defendant' s] breach of his fiduciary duty." ); *see also Short v. Adams*, No. 17-4544, 2019 WL 331679, at *9 (E.D. Pa. Jan. 25, 2019) (dismissing state law claims based on conditions at a halfway house, including claims for breach of contract and breach of fiduciary duty, where plaintiff failed to allege the existence of a contract or fiduciary relationship).

Moreover, Graham's claims of reckless endangerment appear to be improperly based on criminal statutes that do not support a civil cause of action. *See Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 351 (E.D. Pa. 2022) ("[T]here is no civil remedy recognized in Pennsylvania for the crime of reckless endangerment.").

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Graham's Third Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The dismissal will be without prejudice to Graham filing a fourth amended complaint, which will be his final opportunity to present an organized narrative that clearly sets forth what happened, when it happened, and who was responsible, in a manner that would support the claims he seeks to bring in this Court. In short, Graham must present in narrative form the "who, what, where, and how," and state why he believes the Defendants violated his rights. *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022); (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)). An appropriate Order follows, which provides further instruction about amendment.

            **BY THE COURT:**

            **/S/WENDY BEETLESTONE, J.**

            _____
            **WENDY BEETLESTONE, J.**